Frank S. Hedin (SBN 291289)
fhedin@hedinhall.com
David W. Hall (SBN 274921)
dhall@hedinhall.com
HEDIN HALL LLP
Four Embarcadero Center, Suite 1400
San Francisco, California 94104
Telephone: +1 (415) 766-3534
Facsimile: +1 (415) 402-0058

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENA GRIFFITH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BOLL & BRANCH, LLC,<br><br>Defendant. | Case No. 3:20-cv-1181<br><br>**CLASS ACTION COMPLAINT**<br><br>(DEMAND FOR JURY TRIAL) |

Plaintiff Dena Griffith, individually and on behalf of all others similarly situated, complains and alleges as follows based on personal knowledge as to herself, the investigation of her counsel, and information and belief as to all other matters. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth in this complaint, after a reasonable opportunity for discovery.

## NATURE OF ACTION

1. Plaintiff brings this action for legal and equitable remedies to redress the illegal actions of Boll & Branch, LLC in transmitting unsolicited, autodialed text messages to Plaintiff's cellular telephone number and the cellular telephone numbers

1  of numerous other consumers across the country, in violation of the Telephone
2  Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

### JURISDICTION AND VENUE

4   2.   The Court has subject-matter jurisdiction over this action pursuant to 28
5  U.S.C. § 1331 and 47 U.S.C. § 227.

6   3.   Personal jurisdiction and venue are proper in California and within this
7  District because Plaintiff is a resident and citizen of California and because Plaintiff's
8  claims arise in substantial part from actions taken by or on behalf of Defendant that
9  originated and emanated in substantial part from within this District. As alleged in
10 greater detail below, Defendant used Twilio Inc.'s "Copilot" technology to
11 surreptitiously extract Plaintiff's cellular telephone number from her cellular device
12 without her knowledge let alone consent, and thereafter knowingly made, initiated, and
13 transmitted multiple TCPA-violative text messages to Plaintiff's cellular telephone
14 number (which is assigned a California-based area code) from Twilio Inc.'s corporate
15 headquarters in San Francisco, California, via Twilio Inc.'s text-message dialing and
16 transmission technologies (including its "Copilot" technology and other web-based
17 APIs) that are owned, operated, and maintained by Twilio Inc. (on its clients', including
18 Defendant's, behalf) at its corporate headquarters and principal place of business in
19 San Franscisco, California. The subject text messages sent to Plaintiff were directed by
20 Defendant into California and were therafter received by Plaintiff in California.

### PARTIES

22  4.   Plaintiff Dena Griffith is, and at all times mentioned herein was, an
23 individual and a "person" as defined by 47 U.S.C. § 153(39) and a citizen and resident

of California. Plaintiff is, and at all times mentioned herein was, the sole user of the cellular telephone number (619) ***-8580 (the "8580 Number").

5. Defendant Boll & Branch, LLC is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39). Defendant is incorporated in Delaware and maintains its corporate headquarters in Summit, New Jersey. Defendant owns and operates an e-commerce business at the website http://www.bollandbranch.com, where it sells bedding products to consumers.

6. Non-party Twilio Inc. ("Twilio") is a cloud communications platform as a service company that maintains, and at all times mentioned herein maintained, its corporate headquarters and principal place of business in San Francisco, California. Twilio provides access to its San Franscisco-based platform and related technologies (including its "Copilot" technology) to its clients, one of which is the Defendant, to enable Defendant and its other clients to programmatically make and receive phone calls, send and receive text messages, and perform other related communication functions using its web-service APIs. All or substantially all of the text-message log files reflecting Defendant's transmission of the subject text messages to Plaintiff and members of the putative class, all or substantially all of the documents, communications, and electronically stored information concerning the dialing technologies used to make, initiate, and transmit the subject text messages, and all or substantially all of the witnesses with personal knowledge concerning such records and technologies are located at Twilio's headquarters and principal place of business in San Franscisco, California.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991**

7. In 1991, faced with a national outcry over the vast proliferation of "robocalls" to the telephones of American consumers, Congress enacted the TCPA to address certain abusive telemarketing practices. The TCPA prohibits any person from, inter alia, using an "automatic telephone dialing system" ("ATDS"), also known as an "autodialer," to make any call, including send any text message, to a wireless telephone number absent an emergency purpose or the "prior express consent" of the party called or texted. *See* 47 U.S.C. § 227(b)(1).

8. Unsolicited text messages have become especially problematic for consumers in recent years. As the Pew Research Center found, "[s]pam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds — from coupons to phishing schemes — sent directly to user's cell phones."[1]

9. Companies today frequently blast consumers with text-message spam using "Short Message Services" (or "SMS") technology, which allows for the rapid transmission and receipt of massive numbers of short messages to and from wireless telephones. Another technology known as "Multimedia Messaging Services" (or "MMS") is similar to SMS but also permits the inclusion of photos, videos, and other audio-visual content within a text message.

10. Companies deliver SMS and MMS text messages directly to consumers' wireless devices by transmitting these messages to the telephone numbers assigned to their devices. Because wireless telephones are carried on their owners' persons, SMS

---

[1] Amanda Lenhart, "Cell Phones and American Adults," Pew Research Center, September 2, 2010, at 1, *available at* http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx.

and MMS text messages are immediately received, virtually anywhere in the world, by the consumers to whom they are sent. When an SMS or MMS text message is successfully transmitted, the receiving device notifies its owner that he or she has received a new message by way of an auditory and/or visual alert. Consequently, unsolicited SMS and MMS text messages are distracting and aggravating to recipients and intrude upon their recipients' seclusion on receipt.

11.  Text-message spam can also be costly to receive because consumers typically either pay their wireless service providers in advance for the text messages they receive or incur usage allocation deductions to their text messaging or data plans, regardless of whether such messages are authorized.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

12.  The 8580 Number is, and at all times mentioned herein was, assigned to cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

13.  On or about August 5, 2019, Plaintiff used her cellular device linked to the 8580 Number to call Defendant's toll-free customer-service number, (800) 678-3234, to ask Defendant a question about placing an online order on its http://www.bollandbranch.com website.  During this brief call, Plaintiff's was directed to one of Defendant's customer service representatives; Plaintiff did not provide her 8580 Number to Defendant's representative and did not provide the representative any form of consent, permission, or authorization to receive autodialed telephone calls or text messages from Defendant on the 8580 Number. In fact, Plaintiff ended the call shortly after being connected with Defendant's live representative, as Plaintiff had found the answer to her question online just as she was connected to the representative.

14. At no time prior to calling Defendant's toll-free telephone number on August 5, 2019 had Plaintiff expressly consented to receive Defendant's autodialed text messages to her 8580 Number.

15. Nonetheless, shortly after Plaintiff's call to Defendant's toll-free number on August 5, 2019 had ended, Defendant transmitted or caused to be transmitted, by itself or through an intermediary or intermediaries, multiple autodialed SMS or MMS text messages to the 8580 Number without Plaintiff's express consent, as depicted below in screenshots taken from Plaintiff's cellular device:

  

16. Each of the three unsolicited text messages Defendant sent to the 8580 Number on August 5, 2019 originated from (832) 412-1522, which is a telephone number leased or owned by Defendant or Defendant's agent(s) or affiliate(s) and is used for operating Defendant's outgoing text message campaigns.

17. The hyperlinks contained in the above-depicted text messages direct to webpages located at the domain names sdvye.com, ngcrt.com, and dydci.com, which thereafter automatically redirect to webpages located at the subdomain support.bollandbranch.com, all of which are leased or owned, and operated or maintained, by Defendant or Defendant's agent(s) or affiliate(s) and are used in connection with Defendant's outgoing text message campaigns.

18. Because Plaintiff is alerted by her cellular device, by auditory or visual means, whenever she receives a text message, the unsolicited, autodialed text messages that Defendant transmitted to Plaintiff's 8580 Number on August 5, 2019 invaded Plaintiff's privacy and intruded upon Plaintiff's seclusion upon receipt. Plaintiff became distracted and aggravated as a result of receiving Defendant's unsolicited text messages.

19. Defendant acquired the 8580 Number from Plaintiff in a nonconsensual and indeed surreptitious manner, via an automated technological process known as "number trapping." Defendant employed this technology during the call Plaintiff had placed to its toll-free number on August 5, 2019, without informing Plaintiff of such practices much less asking for her permission to be subjected to such practices. Plaintiff is informed and believes that Defendant has used, and continues to use, the same "number trapping" technology to acquire the telephone numbers of all or substantially all of the consumers who call its toll-free telephone number, and that Defendant thereafter sends one or more automated text messages to each such number, containing the same or substantially the same content as contained in the messages that Plaintiff received on August 5, 2019.

20. All telephone contact by Defendant or affiliates, subsidiaries, or agents of Defendant to Plaintiff's 8580 Number and to the numbers of the unnamed Class members occurred using an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(b)(1)(A). Specifically, Defendant utilized an "automatic telephone dialing system" because all such text messages were sent from telephone numbers used for the exclusive purpose of transmitting text messages to consumers *en masse*; because

the subject text messages contained the same or substantially the same pro forma content and were sent to all numbers acquired by Defendant via "number trapping"; because the dialing equipment utilized by or on behalf of Defendant includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls or texts simultaneously (all without human intervention); and because the hardware and software used by or on behalf of Defendant to send such messages have the capacity to store, produce, and dial random or sequential numbers, and to receive and store lists of telephone numbers, and to then dial such numbers, *en masse*, in an automated fashion and without human intervention.

21. And indeed, Defendant actually transmitted the text messages at issue in this case to Plaintiff and all other putative Class members in an automated fashion and without human intervention, with hardware and software that received and stored telephone numbers and then automatically dialed such numbers. Notably, on its website, Defendant characterizes its text messages to consumers as "automated marketing and informational text messages," and admits that such messages "may be sent using an automatic telephone dialing system.""[2]

22. The automatic telephone dialing technology utilized by or on behalf of Defendant to transmit the subject text messages to Plaintiff and the members of the Class was provided by Twilio, among other agent(s) or affiliate(s) of Defendant, including on information and belief Zendesk, Inc., which, like Twilio, maintains its corporate headquarters and principal place of business in, and operated the technology

---

[2] "Boll & Branch Mobile Marketing Program Terms & Conditions," Boll & Branch, LLC, *available at* https://www.bollandbranch.com/pages/mobile-marketing-program-terms-conditions (last accessed Aug. 15, 2019).

1 implicated in this case from, San Francisco, California and within this District. In
2 particular, Defendant sent the subject text messages using, in conjunction with other
3 technology, Twilio's "Copilot" system, the functionality of which is "automated" in
4 every sense of the word, as shown in the following graphical illustration of the system:



[3]

23.     Plaintiff has never provided her "prior express consent" or any other form of consent to Defendant or any affiliate, subsidiary, or agent of Defendant authorizing or permitting Defendant to transmit any text messages to the 8580 Number using an "automatic telephone dialing system" within the meaning of 47 U.S.C. § 227(b)(1)(A).

## CLASS ALLEGATIONS

24.     <u>Class Definition</u>. Plaintiff brings this civil class action on behalf of herself individually and on behalf of all other similarly situated persons as a class action

---

[3] "Twilio Docs: Sticky Sender," Twilio Inc., *available at* https://www.twilio.com/docs/glossary/what-is-a-sticky-sender (last accessed Aug. 15, 2019).

pursuant to Federal Rule of Civil Procedure 23. The "Class" which Plaintiff seeks to represent is comprised of and defined as follows:

> All persons in the United States who, at any time between February 15, 2016 and the present, called the number (800) 678-3234 from a telephone number assigned to cellular telephone service and thereafter received one or more text message(s) to such cellular telephone number sent by Defendant (or an affiliate, subsidiary, or agent of Defendant acting on Defendant's behalf) via Twilio's "Copilot" technology.

25. Defendant, its employees, and agents are excluded from the Class, as are individuals who both: (1) fall within the defintion of the Class set forth above, but (2) had, prior to calling the number (800) 678-3234 from the cellular telephone number at which they thereafter received a text message sent by or on behalf of Defendant via Twilio's "Copilot" technology, previously provided such cellular telephone number to Defendant.

26. Plaintiff reserves the right to modify the definition of the Class (or add one or more subclasses) after further discovery.

27. Plaintiff and all Class members have been impacted and harmed by the acts of Defendant or its affiliates or subsidiaries.

28. This Class Action Complaint seeks injunctive relief and monetary damages.

29. This action may properly be brought and maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b). This class action satisfies the numerosity, typicality, adequacy, commonality, predominance, and superiority requirements.

30. Upon application by Plaintiff's counsel for certification of the Class, the Court may also be requested to utilize and certify subclasses in the interests of manageability, justice, or judicial economy.

31. <u>Numerosity</u>. The number of persons within the Class is substantial, believed to amount to tens of thousands of persons dispersed throughout the United States. It is, therefore, impractical to join each member of the Class as a named Plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

32. <u>Typicality</u>. Plaintiff received at least one text message on her cellular telephone number sent by Defendant using Twilio's "Copilot" technology, after having used such number to place a call to the number (800) 678-3234. Consequently, the claims of Plaintiff are typical of the claims of the members of the Class, and Plaintiff's interests are consistent with and not antagonistic to those of the other Class members she seeks to represent. Plaintiff and all members of the Class have been impacted by, and face continuing harm arising out of, Defendant's violations or misconduct as alleged herein.

33. <u>Adequacy</u>. As Class representative, Plaintiff has no interests adverse to, or which conflict with, the interests of the absent members of the Class, and is able to fairly and adequately represent and protect the interests of such a Class. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Class and will vigorously pursue those claims. If necessary, Plaintiff may seek

leave to amend this Class Action Complaint to add additional Class representatives or assert additional claims.

34. <u>Competency of Class Counsel</u>. Plaintiff has retained and is represented by experienced, qualified, and competent counsel committed to prosecuting this action. Counsel are experienced in handling complex class action claims, in particular claims under the TCPA and other data privacy and consumer protection statutes.

35. <u>Commonality and Predominance</u>. There are well-defined common questions of fact and law that exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member and may be determined without reference to the individual circumstances of any class member, include (but are not limited to) the following:

   a) Whether Defendant or any agent(s) of Defendant transmitted text messages to Plaintiff's and Class members' cellular telephone numbers on or after February 15, 2016 using Twilio's "Copilot" technology;

   b) Whether such text messages were sent using an "automatic telephone dialing system";

   c) Whether Defendant can meet its burden to show that it obtained recipients' "prior express consent" within the meaning of the TCPA and its implementing regulations to send the text messages complained of, assuming such an affirmative defense is raised;

   d) Whether the complained of conduct was knowing or willful and thus whether damages should be trebled; and

   e) Whether Defendant or any agent(s) of Defendant should be enjoined from engaging in such conduct in the future.

36. <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. Class wide relief is essential to compel compliance with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the text messages at issue are all automated and the Class members, by definition, did not provide the prior express consent required under the statute to authorize such text

messages to their cellular telephones. The Class members can be readily located and notified of this class action through Defendant's records and, if necessary, the records of Twilio, Iterable, Zendesk, and/or cellular telephone providers.

37. Additionally, the prosecution of separate actions by individual Class members may create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to such adjudications, thereby substantially impairing or impeding the ability of such nonparty Class members to protect their interests. The prosecution of individual actions by Class members could further establish inconsistent results and/or establish incompatible standards of conduct for Defendant.

38. Defendant or any affiliates, subsidiaries, or agents of Defendant have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate. Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

**CLAIM FOR RELIEF**
VIOLATION OF THE TELEPHONE
CONSUMER PROTECTION ACT
(47 U.S.C. § 227)

39. Plaintiff incorporates by reference paragraphs 1-38 of this Class Action Complaint as if fully stated herein.

40. The foregoing acts and omissions constitute violations of the TCPA by Defendant, including but not limited to violations of 47 U.S.C. § 227(b)(1).

41. As a result of Defendant's violations of the TCPA, Plaintiff and all Class members are entitled to, and do seek, injunctive relief prohibiting such TCPA-violative conduct in the future pursuant to 47 U.S.C. § 227(b)(3).

42. As a result of Defendant's violations of the TCPA, Plaintiff and members of the Class are also entitled to, and do seek, an award of $500.00 in statutory damages for each such violation of the TCPA (or $1,500.00 for each such violation committed willfully or knowingly) pursuant to 47 U.S.C. § 227(b)(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dena Griffith prays for relief and judgment in favor of herself and the Class as follows:

A. An Order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the law firm representing Plaintiff as counsel for the Class;

B. Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

C. As a result of each of Defendant's violations of 47 U.S.C. § 227(b)(1), statutory damages of $500.00 (or $1,500.00 for any violations committed willfully or knowingly) for Plaintiff and members of the Class; and

D. An award of attorneys' fees and costs to counsel for Plaintiff and the Class.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the Class, demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

| | |
|---|---|
| Dated: February 15, 2020 | HEDIN HALL LLP |
| | By:   /s/ Frank S. Hedin |
| | Frank S. Hedin |
| | |
| | Frank S. Hedin (SBN 291289) |
| | fhedin@hedinhall.com |
| | David W. Hall (SBN 274921) |
| | dhall@hedinhall.com |
| | Four Embarcadero Center, Suite 1400 |
| | San Francisco, California 94104 |
| | Telephone:  + 1 (415) 766-3534 |
| | Facsimile:   + 1 (415) 402-0058 |
| | |
| | *Counsel for Plaintiff and the Putative Class* |